**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:14CR391-1 |
| | ) | |
| NAZARIO BENITEZ-ELVIRA | ) | |

**MEMORANDUM OPINION AND ORDER**

This case comes before the Court on an oral motion for detention by the United States (Docket Entry dated Nov. 4, 2014). For the reasons that follow, the Court grants that motion.

BACKGROUND

A grand jury for this District indicted the defendant for making a false statement on a passport application by using a name and Social Security number he knew did not belong to him, in violation of 18 U.S.C. § 1542. (Docket Entry 1.) Following the disclosure to the parties of a Pretrial Services Report, the case came before the Court for a hearing on an oral motion for detention by the United States, pursuant to 18 U.S.C. § 3142(f)(2). (See Docket Entry dated Nov. 12, 2014; see also Docket Entry dated Nov. 4, 2014.) At the hearing, the defendant (through counsel) cross-examined the federal agent called by the United States and proffered a release plan, at which point the Court continued the matter to allow the Probation Office to investigate the proposed third-party custodian. (See Docket Entry dated Nov. 12, 2014.)

The defendant subsequently made a filing that addressed, inter alia, the Probation Office's addendum regarding the proposed third-party custodian. (Docket Entry 10.) The Court then reconvened the hearing, received the proposed third-party custodian's testimony, entertained the arguments of counsel, and took the matter under advisement. (<u>See</u> Docket Entry dated Nov. 25, 2014.) The defendant thereafter submitted additional authority. (Docket Entry 11.) He also pleaded guilty and the Court (per United States District Judge Catherine C. Eagles) found a factual basis. (<u>See</u> Docket Entry dated Dec. 2, 2014; <u>see also</u> Docket Entries 12, 13.)

Pursuant to 18 U.S.C. § 3142(e)(1), the Court concludes, by a preponderance of the evidence, that the defendant poses a risk of flight that available release conditions do not reasonably address and therefore it enters this written order of detention, as required by 18 U.S.C. § 3142(i).[1]

---

[1] Because the defendant has pleaded guilty, the Court generally now could release him only upon "find[ing] by clear and convincing evidence that [he] is not likely to flee," 18 U.S.C. § 3143(a)(1); however, that standard (which tends to favor detention more than the one set by Section 3142(e)) does not apply to a defendant "for whom the applicable guideline promulgated pursuant to 28 U.S.C. [§] 994 does not recommend a term of imprisonment," 18 U.S.C. § 3143(a)(1). At the detention hearing, the defendant argued that, under the United States Sentencing Guidelines, he faced a Zone A range of zero to six months in prison, i.e., a guideline that does not recommend imprisonment, <u>see</u> U.S.S.G. § 5C1.1(b). Accordingly, the Court will apply Section 3142(e)'s more-defendant-favorable standard.

DISCUSSION

In evaluating the issue of release or detention, the Court has considered the following statutorily-prescribed factors: "(1) the nature and circumstances of the offense charged . . .; (2) the weight of the evidence against the [defendant]; [and] (3) the history and characteristics of the [defendant] . . . ." 18 U.S.C. § 3142(g).[2] Based on the record before it, the Court makes the following findings of fact and/or conclusions of law:

1) the offense charged against the defendant is:

    A) serious in nature, as reflected by the substantial, available penalties, see, e.g., 18 U.S.C. § 1542 (authorizing 10-year prison term for even non-aggravated violations); United States v. Duranseau, 26 F.3d 804, 808 (8th Cir. 1994) (agreeing that offense punishable by up to 10 years in prison constitutes a serious offense); United States v. Melquizo, 824 F.2d 370, 371 (5th Cir. 1987) ("We find that a possible sentence of ten years is also sufficient indication that the offense is serious."); and

    B) involved circumstances indicative of a serious risk of nonappearance, see, e.g., United States v. Donagal, No. CR 14-285-JST(KAW), 2014 WL 4418192, at *4 (N.D. Cal. Sept. 8, 2014) (unpublished) ("The possibility of flight is bolstered by the government's report that Defendant presented himself under a false

---

[2] The United States did not seek detention based on risk of danger and thus the Court has not considered that subject.

identity . . . and had fraudulent identification documents to support that identity."), aff'd, 2014 WL 6601843 (N.D. Cal. Nov. 18, 2014) (unpublished);[3] United States v. Valerio, Crim. Action No. 07-10421-FDS, 2009 WL 2058851, at *2 (D. Mass. July 10, 2009) (unpublished) ("[A defendant's] history of using a false identity is also a relevant factor in the risk-of-flight analysis."); United States v. Dreier, 596 F. Supp. 2d 831, 832 (S.D.N.Y. 2009) (describing "assumption of false identity [as] a sine qua non to any successful flight from justice"); United States v. Vasconellos, 519 F. Supp. 2d 311, 317 (N.D.N.Y. 2007) ("When considering risk of flight, . . . [p]ertinent factors include . . . the use of false names."); United States v. Ailemen, 165 F.R.D. 571, 598 (N.D. Cal. 1996) (recognizing that a defendant's commission of passport fraud supported view that he presented "serious flight risk");

2) the weight of the evidence against the defendant is overwhelming, in that:

    A) an investigation into a United States passport application submitted in the name of Eduardo Matheews Martinez, revealed (including through a witness interview) that the photograph of the applicant actually depicted the defendant; and

---

[3] "An applicant for a passport must apply in person with proof of citizenship (usually a birth certificate) and a photo identification (usually a driver's license)." United States v. Holmes, 595 F.3d 1255, 1257 (11th Cir. 2010). As noted below, the defendant admitted fraudulently obtaining an identification document in a false name.

B) the defendant admitted that he entered the United States illegally, purchased false identity information which he used to fraudulently obtain an identification document in a false name, and submitted the instant false passport application;[4] and

3) the history and characteristics of the defendant raise the following concerns regarding risk of nonappearance:

A) the defendant possesses family ties to Mexico and to areas of the United States far removed from this district;

B) the defendant frequently traveled between the United States and Mexico while using false documentation;

C) the defendant lacks close ties to anyone with lawful status in the United States;

D) the defendant lacks lawful status in the United States and faces the prospect of deportation at the conclusion of these proceedings and any custodial sentence; and

---

[4] The defendant's guilty plea confirms the Court's determination regarding the strength of the evidence.

E) the defendant has obtained multiple driver licenses, including in a false name,[5] and has used a false name in connection with state court proceedings.

On balance, the Court finds that the record establishes by a preponderance of the evidence that no available combination of release conditions reasonably would assure the defendant's appearance. In this regard, the Court notes, in particular, the serious nature of the offense charged, the overwhelming evidence of the defendant's guilt, his use of a false identity (including in connection with official documents and proceedings), his prior travel between the United States and Mexico, his familial ties to Mexico and distant areas of the United States, his lack of close ties to anyone with lawful status in the United States, and his own lack of lawful status in the United States. See United States v. Salas-Urenas, 430 F. App'x 721, 723 (10th Cir. 2011) ("A defendant's immigration status . . . [is] relevant to the detention decision as part of the history and characteristics of the

---

[5] The defendant has asserted that his possession of driver licenses in two names "is not evidence that he is a risk of flight [because] . . . [h]aving a false identification is, unfortunately, often part and parcel to living in the United States without legal permission." (Docket Entry 10 at 5.) The defendant has offered nothing to support that view. (See id.) Moreover, at the continuation of the detention hearing, his counsel failed to articulate any theory for why the defendant needed multiple driver licenses simply "to liv[e] in the United States without legal permission." Under these circumstances, the Court will follow the above- and below-cited case law recognizing that possession of false identification documents indicates a risk of flight.

defendant."); United States v. Parra, No. 92-1839, 976 F.2d 724 (table), 1992 WL 226046, at *5 (1st Cir. Sept. 17, 1992) (unpublished) (ordering detention where "the defendant is not a citizen, the evidence against him is strong, and the offenses with which he stands charged are serious"); Donagal, 2014 WL 4418192, at *4 ("The possibility of flight is bolstered by the government's report that Defendant presented himself under a false identity . . . and had fraudulent identification documents to support that identity."); United States v. Ferguson, No. 10-20403, 2013 WL 1364700, at *4 (E.D. Mich. Apr. 4, 2013) (unpublished) ("That Defendant Ferguson was able to obtain a government document with a false identity once shows that he likely can do so again and thus presents a flight risk."); United States v. Ong, 762 F. Supp. 2d 1353, 1363 (N.D. Ga. 2010) ("While a defendant's status as a deportable alien alone does not mandate detention, it is a factor which weighs heavily in the risk of non-appearance analysis."); Valerio, 2009 WL 2058851, at *2 ("[A defendant's] history of using a false identity is also a relevant factor in the risk-of-flight analysis."); United States v. Miguel-Pascual, 608 F. Supp. 2d 83, 86 (D.D.C. 2009) (citing fact that the defendant "is an illegal alien" in support of conclusion that he "pose[d] a risk of flight"); Dreier, 596 F. Supp. 2d at 832 (describing "assumption of false identity [as] a sine qua non to any successful flight from justice"); United States v. Manuel-Duarte, No. 5:08CR10-7-V, 2008

-7-

WL 1775267, at *2 (W.D.N.C. Apr. 15, 2008) (unpublished) ("Defendant resides in this country as an illegal alien. . . . The immigration status of Defendant renders his ties to the community tenuous, and thus he remains a risk for flight."); Vasconellos, 519 F. Supp. 2d at 317 ("When considering risk of flight, . . . [p]ertinent factors include . . . the use of false names.").[6]

Simply put, a significant incentive exists for the defendant to absent himself from further proceedings to avoid possible imprisonment followed by deportation.[7] Further, he has shown the

---

[6] The defendant's first supplemental filing conflates the constitutional guarantee of equal protection under the law regardless of national origin with the notion that the Court may not rely on a defendant's lack of lawful immigration status to make detention rulings. (See Docket Entry 10 at 8-9.) Consistent with the above-cited decisions recognizing the propriety of judicial consideration of a defendant's illegal presence in the United States in this context, the United States Supreme Court unanimously has declared that "[t]he fact that all persons, aliens and citizens alike, are protected by the Due Process Clause does not lead to the further conclusion that all aliens are entitled to enjoy all the advantages of citizenship . . . . [A] host of constitutional and statutory provisions rest on the premise that a legitimate distinction between citizens and aliens may justify attributes and benefits for one class not accorded to the other, and the class of aliens is itself a heterogeneous multitude of persons with a wide-ranging variety of ties to this country." Mathews v. Diaz, 426 U.S. 67, 78-79 (1976) (internal footnote omitted); see also McLean v. Crabtree, 173 F.3d 1176, 1185 (9th Cir. 1999) ("Proof of discriminatory intent is required to show that state action having a disparate impact violates the Equal Protection Clause.").

[7] As the defendant has noted, the evidence before the Court reflects that, after confessing his commission of passport fraud to a federal agent, the defendant did not flee; in the defendant's view, that fact proves he does not present a flight risk. (See Docket Entry 10 at 4-6.) The record, however, bears no evidence about what the defendant understood about the prospects of prosecution when his interview with the federal agent ended.
(continued...)

-8-

wherewithal to fraudulently obtain and the willingness to fraudulently use identification documents in a false name, circumstances conducive to flight. Finally, the defendant possesses family connections and a history of travel that indicates he easily could flee to Mexico (from which he could return to the United States at a time of his choosing without discovery) or to another part of the United States (where he could continue to rely on fraudulent documentation to work).

To counter the foregoing, well-established, serious risk of nonappearance, the defendant points to the availability of home confinement with electronic monitoring and his proposed third-party custodian. The Court, however, finds, by a preponderance of the evidence, that such conditions would not reasonably address the flight risk present here because the defendant could depart his approved residence for parts unknown before probation officials reasonably could respond to any electronic or human report of his

---

[7](...continued)
Further, the fact that a potential prosecution failed to cause the defendant to flee, does not mean that the instant actual prosecution would fail to lead to flight. Indeed, in recent months two defendants charged in this Court with making false statements in connection with immigration applications, who (like the defendant in this case) appear to have faced low guideline ranges and deportation, absconded from pretrial release, despite previously having remained in North Carolina for an extended period of time after federal law enforcement officers accused them of immigration fraud. See United States v. Komondi, No. 1:14CR299, Docket Entries 1, 8, 10, 14, 21, 26, 27; see also Docket Entries dated Sept. 5, 2014, and Nov. 13, 2014.) In other words, as the consequences of criminal conduct become more certain and concrete, the motive to take evasive action may become stronger.

unauthorized absence. Moreover, the proposed third-party custodian admitted that her work duties take her away from the proposed residence for eight hours a day five days a week, a fact that significantly undermines her ability to effectively monitor any preparations for flight the defendant might undertake.

As a final matter, none of the six cases tendered by the defendant in his second supplemental filing (Docket Entry 11) alter the Court's foregoing conclusions:

First, in United States v. Sabhnani, 493 F.3d 63 (2d Cir. 2007), the appeals court ordered the release of the defendants (naturalized United States citizens, id. at 65) because the detention issue "ha[d] been cast in a new light by the government's identification in [the appeals] court of the further conditions it deem[ed] necessary to ameliorate the risk of flight," id. at 64-65. The defendant's instant case does not present such circumstances.

Second, in United States v. Tapia, 924 F. Supp. 2d 1093 (D.S.D. 2013), a district judge affirmed a magistrate judge's order releasing a defendant charged with passport fraud where: 1) "[t]he Government stipulated that [his] children [we]re citizens, and that he ha[d] been involved in the community and his children's school," id. at 1095; and 2) "the Government did not present evidence of [his] ties to another country or proclivity for international travel," id. at 1097. By contrast, the record here (as documented above) reflects that the defendant lacks significant ties to anyone

with lawful status in the United States, but possesses family ties to Mexico and traveled there regularly using fraudulent documents.

Third, in United States v. Trujillo-Alvarez, 900 F. Supp. 2d 1167 (D. Or. 2012), a magistrate judge ordered the release of a defendant charged with illegal reentry, who "ha[d] a home, where he and his wife, with whom he ha[d] been living for the past 15 years, [we]re raising their three children, all of whom [we]re U.S. citizens," id. at 1171, and "[t]he government did not seek review by an Article III judge of the release order," id. at 1172. The United States then allowed said defendant to transfer into administrative immigration custody, but without permitting deportation proceedings to take place during the pendency of the federal criminal case; when said defendant sought relief, the court ordered that the United States must "return [him] to the District of Oregon and release him subject to the conditions previously determined by [the] [m]agistrate [j]udge . . . [or] the criminal charge now pending against [him] w[ould] be dismissed with prejudice." Id. at 1181. The holding of that case thus bears no connection to the matters at issue before this Court and the facts that appear to have resulted in a release order in Trujillo-Alvarez differ materially from the facts of the instant case (i.e., the record here does not reflect that the defendant shares a home with a wife of 15 years and United States citizen children).

Fourth, in United States v. Villanueva-Martinez, 707 F. Supp. 2d 855 (N.D. Iowa 2010), the Court released a defendant facing "charges in connection with his illegal presence and the obtaining of employment in the United States," id. at 856, where: 1) he was "married to a United States citizen, and his wife [wa]s expecting a child," id.; and 2) "the Government offered virtually no evidence concerning the actual crimes [he] [wa]s alleged to have committed," id.[8] Conversely, in the instant case (as previously discussed), the defendant possesses no such ties to a United States citizen and the United States presented overwhelming evidence of his guilt.

Fifth, in United States v. Chavez-Rivas, 536 F. Supp. 2d 962 (E.D. Wis. 2008), a district judge affirmed a magistrate judge's order releasing an illegal reentry defendant with "strong family and community ties [in that district, including a] wife and children [who] are citizens [of the United States] and seem unlikely to accompany [him] if he chooses to flee to Mexico or California," id. at 969. Again (as detailed above), the defendant can claim no such connections to this District.

---

[8] The Villanueva-Martinez Court also declined to order detention based on the prospect that release from criminal custody followed by the denial of bond in immigration court could result in deportation prior to disposition of the criminal case. See Villanueva-Martinez, 707 F. Supp. 2d at 856-58. In the instant case, the Court has not relied on the fact of an administrative immigration detainer or any concern that release on the criminal charge could lead to the defendant's deportation prior to disposition of his criminal case.

Sixth (and finally), in United States v. Chen, 820 F. Supp. 2d 1205 (N.D. Cal. 1992), the court initially denied release to two defendants and set conditions for a third that he apparently could not meet, but subsequently determined that the "case ha[d] taken a number of surprising turns, justifying reconsideration of the pretrial release issue for [all three]," id. at 1209.  Most significantly, "the court suppressed, on two alternative grounds, all video evidence obtained by the government pursuant to a search warrant . . . [and] the government refuse[d] to proceed to trial without first attempting through interlocutory appeal to reverse the suppression of the videotapes.  Trial proceedings ha[d] been stayed pending the government's appeal. . . .  For this reason, the defendants now face[d] the tragic prospect of an indeterminate length of pretrial detention."  Id. at 1209-10.  The court concluded that, "[a]t some point, a defendant's Constitutionally-protected interests in due process and a speedy trial overshadow the other pretrial release issues . . . [and] that this point ha[d] now been reached for the three defendants presently before the court."  Id. at 1210.  No such considerations exist in this case.[9]

---

[9] The defendant may have submitted this decision because of its statement that "[a]lienage is a factor which may be taken into account, but by itself cannot be determinative," Chen, 820 F. Supp. at 1208 (citing United States v. Motamedi, 767 F.2d 1403, 1408 (9th Cir. 1985)) (emphasis added).  To the extent the Chen Court there meant that a court should not detain a defendant based on alienage without considering other factors relevant to the issue of release
(continued...)

CONCLUSION

A preponderance of the evidence establishes that the defendant presents a risk of nonappearance insufficiently addressed by available release conditions.

**IT IS THEREFORE ORDERED** that the oral motion for detention by the United States is **GRANTED**. Pursuant to 18 U.S.C. § 3142(e)(1), the defendant is committed to the custody of the United States Attorney General or his designated representative for confinement in a corrections facility separate, to the extent practicable, from persons serving sentences or being held in custody pending appeal. The defendant shall be afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or request of an attorney for the Government, the

---

[9](...continued)
or detention (an approach also condemned in Chavez-Rivas, 536 F. Supp. 2d at 968), this Court agrees; however, if the defendant seeks a construction of the Chen Court's foregoing statement that would preclude a defendant's immigration status from ever having a balance-tipping effect (or weighing heavily in the balancing of relevant factors), this Court rejects that view in favor of the contrary, above-cited authority, such as Ong and Manuel-Duarte. In doing so, the Court notes that the Ninth Circuit opinion cited by the Chen Court on this point does not, in fact, indicate that courts generally should refrain from relying to any significant extent on a defendant's unlawful presence in the United States when assessing risk of nonappearance; instead, the Ninth Circuit merely declined, under the particular facts of that case, to ascribe substantial weight to alienage. See Motamedi, 767 F.2d at 1408 (describing as "strong" defendant's "argu[ment] that because all of his family's property was confiscated after the fall of the Shah, and his family was forced to flee, he [wa]s not free to return to Iran" and therefore "conclud[ing] that the factor [of alienage] does not tip the balance either for or against detention").

person in charge of the corrections facility shall deliver the defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

                                        /s/ L. Patrick Auld
                                              **L. Patrick Auld**
                                   **United States Magistrate Judge**
December 5, 2014